772 P.2d 10

**John FLYNN, Plaintiff–Appellant,**

**v.**

**CORNOYER–HEDRICK ARCHITECTS & PLANNERS, INC., an Arizona corporation; Okland Construction Company, Inc., a Utah corporation; Charles W. Akerlow and Jane Doe Akerlow, husband and wife; Brent R. Dyer and Jane Doe Dyer, husband and wife; John J. Thomas and Jane Doe Thomas, husband and wife; Okland, Ltd., Inc., a Utah corporation doing business as Camelback and 33rd Street Partnership, Defendants–Appellees.**

**No. 1 CA–CIV 9652.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 15, 1988.

Petition for Review Granted in Part and Denied in Part May 2, 1989.*

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

**188**

Law Office of Donald R. Crowell by Donald R. Crowell, Phoenix, for plaintiff-appellant.

Romley & Romley by Arthur E. Romley, Phoenix, for defendant-appellee Cornoyer–Hedrick Architects & Planners, Inc.

Law Offices of Teilborg, Sanders, & Parks, P.C. by Alison Lewis and Bradley R. Jardine, Phoenix, for defendants-appellees Okland Const., Co., Inc., Akerlow, Dyer, Thomas and Okland Ltd., Inc. d/b/a Camelback and 33rd Street Partnership.

## OPINION

HAIRE, Judge.

The issues in this appeal are whether the trial court abused its discretion by denying a motion to continue this case on the inactive calendar, refusing to permit a refiling of a new complaint pursuant to A.R.S. § 12–504 (Supp.1987), and signing a formal order that differed from a prior minute entry.

## FACTS AND PROCEDURAL HISTORY

On December 17, 1985, John Flynn filed a complaint seeking damages for injuries allegedly suffered in a fall on December 17, 1983, on the stairway to an office building. The complaint stated that Flynn's injuries resulted from the negligence of Cornoyer–Hedrick Architects & Planners, Inc. (CHA), Okland Construction Co., Inc., Charles W. and Jane Doe Ackerlow, Brent R. and Jane Doe Dyer, John J. and Jane Doe Thomas, and Okland, Ltd., Inc., doing business as Camelback and 33rd Street Partnership.

On August 22, 1986, the Maricopa County Superior Court administrator's office sent Flynn's counsel a minute entry pursuant to Rule V(e), Uniform Rules of Practice for the Superior Court, 17A, A.R.S., advising him that the case would be placed on the inactive calendar on September 22, 1986 for dismissal on November 24, 1986 unless a proper motion to set and certificate of readiness were filed. Nevertheless, Flynn failed to serve the complaint on the defendants until September 17, 1986.

On October 7, 1986, CHA filed its answer and two days later served Flynn with interrogatories and a request for production.

Pursuant to an open extension of time for filing agreed to by Flynn's counsel, the other defendants filed their answers on October 17, 1986, and served Flynn with interrogatories on November 4, 1986.

Flynn did not respond to the discovery requests, but filed a motion to continue the case on the inactive calendar on November 20, 1986. However, he did not request an expedited hearing on the motion and the case was dismissed on December 2, 1986.

On January 12, 1987, the trial judge heard oral argument on the motion to continue and on other pending motions. She

denied the motion to continue, granted defendants' motion to dismiss, and held that Flynn's motion to set aside the dismissal was moot.

Flynn then filed motions asking the court to reconsider and to grant him permission to refile his complaint pursuant to A.R.S. § 12–504(A). The court denied the motions and Flynn has appealed from the judgment of dismissal and the post-judgment orders.

## DISMISSAL FOR FAILURE TO PROSECUTE

█ Flynn's motion to continue stated that a continuance was necessary because the complaint had not been served until September and answers were not received until October. At the hearing on the motion, Flynn's counsel also argued that settlement negotiations had been conducted prior to the filing of the complaint. He further stated that he had not filed answers to the interrogatories or produced documents that were due in November because he was waiting to see if his motion to continue would be granted. He contended that because discovery had just begun, the matter was not ready to go to trial. The trial judge concluded that this did not establish "good cause" as required by Rule V(e)(2), Uniform Rules of Practice, 17B A.R.S.[1] We agree.

Flynn argues that the trial court's refusal to continue the case was an abuse of discretion under the principles set forth in *Gorman v. City of Phoenix*, 152 Ariz. 179, 731 P.2d 74 (1987). In *Gorman*, the Arizona Supreme Court held:

"Lawyers who fail to comply with Uniform Rule V(e) do so at their peril. [Citation omitted.] However, trial courts should consider carefully a Rule 60 motion to set aside a Uniform Rule V(e) dismissal when, as here, there is evidence that (1) the parties were vigorously pursuing the case, (2) the parties were taking reasonable steps to inform the court of the case's status, and (3) the moving party will be substantially prejudiced by, for example, the running of the limitations period if the dismissal is not set aside. If all these factors are present, even doubtful cases should be resolved in favor of the party moving to set aside the dismissal." (Citation omitted.)

152 Ariz. at 183–84, 731 P.2d at 78–79.

In *Gorman*, the plaintiff had filed and served a complaint, filed a motion to amend her complaint, sent interrogatories, requested admissions and production, filed a list of witnesses and exhibits, supplemented answers to interrogatories, filed a motion to set, filed a motion to compel and participated in depositions. In addition, the plaintiff's attorney was told by the superior court administrator's office that a motion to continue on the inactive calendar would not be necessary. *Id.* at 180, 731 P.2d at 75. The Arizona Supreme Court, after reviewing this record, found that the parties were actively involved in pursuing the litigation and stated:

"A desultory exchange of settlement letters, as in *Bickerstaff* [*v. Denny's Restaurant*, 141 Ariz. 629, 688 P.2d 637 (1984)], may count for very little; a record showing, as in the present case, vigorous pursuit of a claim should count for much. Here, as in similar matters, *diligence is the hallmark*." (Emphasis added.)

152 Ariz. at 183, 731 P.2d at 78.

1. Rule V(e) provides:
   "(e) **Inactive Calendar.** The clerk of the court or court administrator shall place on the Inactive Calendar every case in which a Motion to Set and Certificate of Readiness has not been filed within nine months after the commencement thereof, except that in domestic relations cases, by general order of the presiding judge in any county or by local rule, the time within which domestic relations cases shall be placed on the Inactive Calendar may be shortened to not less than 120 days. All cases remaining on the Inactive Calendar for two months shall be dismissed without prejudice for lack of prosecution, and the court shall make an appropriate order as to any bond or other security filed therein, unless prior to the expiration of such two months period:
   "(1) A proper Motion to Set and Certificate of Readiness is filed; or
   "(2) The court, on motion for good cause shown, orders the case to be continued on the Inactive Calendar for a specified period of time without dismissal."

*See also City of Phoenix v. Geyler,* 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985); *Ace Automotive Products, Inc. v. Van Duyne,* 156 Ariz. 140, 143–144, 750 P.2d 898, 901–902 (App.1987). *Compare Cline v. Ticor Title Ins. Co.,* 154 Ariz. 343, 742 P.2d 844 (App.1987).

We note that of the three factors mentioned in *Gorman,* only substantial prejudice due to the running of the statute of limitations is applicable in this case. The record more than amply supports a conclusion that Flynn was not diligently pursuing this case or taking reasonable steps to keep the court informed of its status.

Flynn's counsel waited nine months after filing the complaint and almost a month after receiving the minute entry setting the dismissal date before serving the defendants. Neither his motion to continue nor his argument to the court attempted to explain why the alleged negotiations prevented him from serving the defendants. In fact, Flynn did not provide the trial court with any details about the negotiations until the filing of his reply memorandum in support of his motion for reconsideration.

Flynn did not file a motion to continue until two months after serving the complaint and he made no attempt to accelerate a hearing on that motion. In addition, he did not respond to discovery requests and did nothing to communicate the status of the case to the trial court between his November 20, 1986 motion and the January 12, 1987 hearing, other than the filing of a motion to set aside the judgment of dismissal. These actions do not demonstrate a vigorous pursuit of the case.

*Gorman* describes factors to be considered when determining whether extraordinary circumstances exist to justify the granting of relief from a judgment pursuant to Rule 60(c)(6), Arizona Rules of Civil Procedure, 17A, A.R.S. In ruling on a contested motion to dismiss for lack of prosecution or for continuing on the inactive calendar, the trial court's discretion is based "upon the same conditions that permit relief under Ariz.R.Civ.P. 60(c), provided [that] the good cause required by Rule V(d)(2) [now Rule V(e)(2)] is shown." *Campbell v. Deddens,* 93 Ariz. 247, 251, 379 P.2d 963, 965 (1963). *See also Hyman v. Arden–May Fair, Inc.,* 150 Ariz. 444, 448, 724 P.2d 63, 67 (App.1986).

■ Whether the facts in a particular case establish good cause is a question that is within the sound discretion of each trial judge. *Walker v. Kendig,* 107 Ariz. 510, 489 P.2d 849 (1971). Rule V guidelines were adopted by the civil judges of the Maricopa County Superior Court in April, 1985 to facilitate the uniform application of the rule. In addressing the meaning of "good cause", the guidelines provide, in part, as follows:

"The party seeking the continuance is required to show some substantial basis for the continuance and the court's focus is primarily upon whether there are unusual discovery or procedural problems which have prevented the case from proceeding at the presumptive pace.

"From a qualitative viewpoint the following elements, although not exclusive, will be considered by the court in determining whether 'good cause' exists:

A. Whether the underlying circumstances were unforeseeable;

B. Whether the underlying circumstances were not due to lack of preparation;

C. Whether the grounds are relevant;

D. Whether the matter was brought to the court's attention in a timely manner; and

E. Whether the adversary is prejudiced.

\*  \*  \*  \*  \*  \*

"Some examples of what does not amount to good cause are:

.  .  .  .  .

B. Motions grounded on the fact that settlement negotiations are pending;

C. Motions grounded upon failure to serve the defendant where due diligence to serve has not been shown."

The record in this case demonstrates no unforeseeable circumstances or unusual discovery or procedural problems. The delay was primarily caused by Flynn's voluntary decision to postpone serving the defendants. We find that the trial court did not abuse its discretion by concluding that Flynn failed to show good cause to continue this case on the inactive calendar.

### A.R.S. § 12–504

■ Flynn also contends that the trial judge abused her discretion in denying his motion to refile his complaint pursuant to A.R.S. § 12–504 (Supp.1987). A.R.S. § 12–504 provides in part:

"A. If an action is commenced within the time limited for the action, and the action is terminated in any manner other than by abatement, voluntary dismissal, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff, or a successor or personal representative, may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination. If an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination."

■ Subsection A permits refiling so as to avoid the bar of the applicable statute of limitations where two different types of dismissals have taken place. The first sentence of Subsection A gives the plaintiff an absolute right to refile within six months and avoid the statute of limitations bar where the dismissal was for any reason other than "by abatement, voluntary dismissal, dismissal for lack of prosecution or a final judgment on the merits." When the dismissal is for one of the reasons set forth in the second sentence of subsection A, the plaintiff's right to refile is not absolute. Rather, the trial judge is given the discretion to allow a refiling. By explicitly recognizing that the trial court has the discretion to provide a period for commencing a new action, the statute implicitly recognizes that the trial court has the discretion to decline to provide a period in which to commence a new action. *Roller Village, Inc. v. Superior Court,* 154 Ariz. 195, 741 P.2d 328 (App.1987).

The available legislative history concerning A.R.S. § 12–504 is sparse. Flynn argues, without citation to any authority, that the statute was passed as a specific response to "the harshness of the Arizona Supreme Court's decision in *Bickerstaff v. Denny's Restaurant, Inc.*" He further argues that in passing the bill, the legislature recognized that the procedural aspects of Rule V(e) should not cause gross injustice.

A.R.S. § 12–504 originated as House Bill 2216 during the 1986 session of the Arizona Legislature. The minutes of the senate and house committees which considered the bill make no reference to *Bickerstaff v. Denny's Restaurant, Inc.* Rather, the comments of the sponsor and interested persons relate to the first provision of the statute concerning a plaintiff's absolute right to refile. The record reflects the bill sponsor's response to the reference to a need for saving statutes in *Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327 (1985). The record does not reflect any discussion of the court's discretion to allow refiling of the second category of dismissals. *See* "Minutes of the House Judiciary Committee", February 24, 1986 and "Minutes of the Senate Judiciary Committee" of April 7, 1986.

The statute does not identify any particular factors that a trial court must consider in exercising its discretion under the second sentence of subsection A to grant or deny a plaintiff's motion to refile a complaint. Nothing suggests that a court must apply the same standards to a motion to refile pursuant to A.R.S. § 12–504 that it must apply to determine whether "extraordinary circumstances" justify the granting of a motion to set aside a dismissal pursuant to Rule 60(c)(6), Arizona Rules of Civil Procedure. Nevertheless, because motions

to refile will typically occur after a Rule V(e) administrative dismissal or after a denial of a motion to continue or to set aside a dismissal, we conclude that to support his motion to refile a plaintiff must present some explanation of his prior conduct and demonstrate the prejudice resulting from the dismissal. Furthermore, given the types of dismissals discussed in the second sentence of subsection A, it is clear that the mere fact that refiling would otherwise be barred by the applicable statute of limitations is not controlling.

■ A mere balancing of prejudice to each party should not constitute the sole factor considered by the trial court. Several factors must be considered in determining whether to permit a plaintiff to refile. The court should ascertain whether the plaintiff acted reasonably and in good faith, whether he prosecuted his case diligently and vigorously, whether a procedural impediment exists which affects his ability to file a second action, and whether either party will be substantially prejudiced. *See, e.g., Gorman v. City of Phoenix*, 152 Ariz. 179, 183, 731 P.2d 74, 78 (1987); *City of Phoenix v. Geyler*, 144 Ariz. 323, 328, 697 P.2d 1073, 1078 (1985); *Addison v. State*, 21 Cal.3d 313, 578 P.2d 941, 146 Cal.Rptr. 224 (1978). Consideration of these factors would ensure application of A.R.S. § 12–504(A) consistent with the intent of both our state supreme court and our legislature.

The burden is on the plaintiff to present the particular circumstances that justify relief under § 12–504. Each case will undoubtedly present unique circumstances that will be pertinent to the exercise of the trial court's discretion. The savings statute should act only as a *limited extension* to prevent injustice. A contrary interpretation would foster abuse of the judicial system by allowing a nondiligent plaintiff to circumvent the otherwise applicable statute of limitations. A plaintiff who has had full opportunity to proceed to trial on the merits should not be afforded a second chance simply because he failed to take advantage of the opportunity presented. There is simply no valid justification to provide additional opportunities where a plaintiff has failed to diligently prosecute his case.

In this case Flynn combined the motion to refile his complaint pursuant to A.R.S. § 12–504 with a motion to reconsider the dismissal. The motion reiterated his assertions that good cause to continue the case on the inactive calendar had been established by his allegation that settlement negotiations were in progress prior to the filing of the complaint. Flynn further argued that the statute of limitations would bar his cause of action unless he was allowed to refile it pursuant to A.R.S. § 12–504.

In response, defendants questioned the adequacy of Flynn's assertions concerning settlement negotiations and argued that the limited negotiations involved in this case did not interfere with or excuse his failure to prosecute his case diligently. Defendants also argued that the history of the case evidenced a blatant lack of prosecution on Flynn's part and that Flynn had not provided the court with a reasonable basis for allowing him to file a new complaint.

In his reply to defendants' responses, Flynn reiterated his position with respect to good cause in light of *Gorman* and detailed specific telephone calls that had occurred between his counsel and counsel for defendants in June, July and August of 1986. He also noted that difficulties in establishing the appropriate insurance carrier for certain defendants had arisen.[2]

We find nothing in Flynn's memoranda to the court that would compel a trial court to exercise its discretion in favor of permitting him to file a new complaint to avoid the statute of limitations problem. Since the record demonstrates Flynn's substantial lack of diligence in pursuing this claim, we find no abuse of discretion by the trial court in denying his motion.

---

2. CHA had contended below that Flynn's A.R.S. § 12–504 motion was untimely. Flynn argued below that CHA had misinterpreted the statute.

CHA has not raised any issue on appeal with respect to the timeliness of the motion.

## CONSIDERATION OF FLYNN'S REPLY MEMORANDUM

■ Flynn notes that the trial court's April 7, 1987 minute entry denying his motion for reconsideration and motion to refile pursuant to A.R.S. § 12–504 does not mention that the trial court reviewed his reply. He further notes that the formal written order later submitted by Cornoyer's attorney and signed by the judge stated that the court had considered the reply. Flynn contends that the formal written order was erroneous because it did not conform to the trial court's minute entry. He further argues that the trial judge committed error by signing the formal order without giving Flynn the appropriate time to file an objection to the form of order pursuant to Rule 58(d), Arizona Rules of Civil Procedure. He argues that the trial judge compounded her error by failing to rule upon or to acknowledge his objection to the form of order.

■ Although Flynn contends that the trial judge did not consider his reply, there is nothing in the record to support this assertion. There was an interim period between the issuance of the minute entry and the approval of the formal order during which the court had access to the reply. We will not presume that the minute entry specifically approving the formal order acknowledging the reply was erroneous. Where there is a conflict between a minute entry and the judgment, the terms of the judgment will control. In *McFadden v. McFadden*, 22 Ariz. 246, 196 P. 452 (1921) our supreme court, in discussing the difference between formal findings of fact and a minute entry, stated:

> "At most, we think the minute entry is evidence that the court ordered a judgment, *the terms thereof to be ascertained when it was written up and signed by the court.*" (Emphasis added.)

22 Ariz. at 250, 196 P. at 453. *See also Hiatt v. Hiatt*, 52 Ariz. 284, 80 P.2d 692 (1938).

Additionally, we note that although Flynn called this alleged "omission" to the attention of the trial judge, he did not request oral argument concerning his ob-

jections. The judge did not change her previous order, and Flynn asks us to infer from this that she failed to read the reply. To the contrary, we find that the more reasonable inference to be drawn from these facts is that the trial judge considered the objection and the reply and rejected the reasoning in question.

In his reply, Flynn's primary argument concerning his motion to refile pursuant to A.R.S. § 12–504 was that CHA's contention that the motion was untimely was incorrect. There is nothing in the record to indicate that the trial court denied the motion on the basis of timeliness. The minute entry indicates that defendant's responsive motion, including the untimeliness argument, was considered and rejected. The burden is on the appellant to establish prejudicial or reversible error. *Gutierrez v. Gutierrez*, 20 Ariz.App. 388, 513 P.2d 677 (1973). Since Flynn has not met this burden, the error, if any, is harmless.

The judgment and orders of the trial court are affirmed.

JACOBSON, P.J., and GREER, J., concur.